We will move on to case number 8, Royal v. Cameron Norris, Ms. Trier. My name is Carolyn Trier and I am the attorney for the five penitent officers. Based on the district court's facts, this court has jurisdiction because based on the clearly established law and here the appellants accept for purposes of the qualified immunity inquiry the facts and reasonable inferences favorable to the estate of Lance Royal and contend that those facts fail to show a violation of clearly established law. So for purposes of the appeal are you agreeing that the officers were on notice of a serious medical need for purposes of the appeal? For purposes of the appeal, in order for this court to have jurisdiction, I have to agree with that. So based on that finding by the district court, there was no clearly established law that would have put these officers on notice that they had to take any additional precautionary actions that they took given the facts of this case. So you do not see this record as one in which they simply took no action in light of their facts. They took a lot of action. They repeatedly asked Lance Royal, had you swallowed any cocaine? He said no, repeatedly. They asked him how he felt at the scene during the transport to the jail in the interview room. Do you feel okay? How are you feeling? And he repeatedly said he was fine. He said I didn't swallow any cocaine. He didn't request medical treatment. The paramedics checked him out at the scene and said that he did not need to go to the hospital. Can I interrupt and say how of what importance is the intervention of the paramedics? I think I picked up a little bit from the other brief that that maybe the paramedics weren't as fully informed or maybe they were told oh this is no big deal but maybe you should look at him or that there was some problem with the paramedic opinion. Well I think what Judge Terry pulled out of the videos was that when Sergeant Bowers, they initially called the paramedics because the original suspect for this narcotics investigation indicated that she was feeling sick so they called for an ambulance and then Sergeant Bowers said to the paramedic why don't you go ahead and talk to Lance Royal because he was chewing some rock and see if he needs to go to the hospital and then he made a comment I don't think he does but could you check him out and Judge Terry kind of harped on that phrase I don't think he does but the paramedics are trained medical professionals and regardless of what the officer says if he made that comment or not they still have a duty to apply their training and decide whether this person needs to go to the hospital or not and they're not they're not dependents here. No they are not. Isn't it uncontested to that they told the paramedics that he had been chewing cocaine? They did tell them. And that's captured on the video evidence? Yes. They said there was some reference to two or two rocks and what they told him? Well there's a Lance Royal as he's sitting in the back of a squad car tells the paramedics, I've listened to it over and over and he says something about two and so Detective Francis who was the one who removed what Lance Royal had spit out of his mouth onto the pavement he believed that was the amount of the two rocks you know based on his training and experience as a narcotics detective. What about all the powder that was in the car? Wasn't that suggestive that maybe there had been a whole lot of cocaine in play? Right and actually I kept reading that account of this car that was just a blizzard of cocaine and thinking was not wasn't anybody thinking that he'd inhaled some of it? And you can certainly inhale cocaine which might have added to the dose so to speak. Right. These officers conduct hundreds of narcotic investigations a year and those types of facts are very typical that there's you know when they pull over a drug house or crack house there's drugs it's a drug investigation and it's not uncommon that there might be cocaine residue or cocaine powder in the car I mean that's not unusual. So is this well I mean of course not if you're looking for drugs right you know and you you will sometimes or often find them but we talking about residue I mean at least the way that the description read was that it was a little more than residue that it was kind of you know and that what you're referring to is on the passenger side of the car which is where Portia Gentry was seated. Lance Royal was the driver of the car and there was not much residue around where he was or the powder that you're speaking of and when the ambulance personnel arrived on the scene the officers do tell the paramedics that you know there's a lot of cocaine everywhere so the paramedics were informed of that and the officers should be entitled to rely on the paramedics professional opinion you know that he didn't need to be transported to the hospital that he didn't have an emergency medical need. I have a question about why you're conceding notice for purposes of this appeal because under Scott versus Harris you know if the video evidence blatantly contradicts it and no reasonable juror could infer from the video evidence that they didn't that they had noticed right I mean that then that's so within our jurisdiction I mean Scott versus Harris was on summary judgment from a qualified immunity case. Well I'm conceding it so that you'll accept jurisdiction of the case because I was just up here a month ago and the and I didn't concede something so the court said there wasn't jurisdiction and I and I'm focusing on the second prong of qualified immunity in that even if you take everything that the district court finds is true the officer still didn't violate clearly established law. Okay well I understand that I'm just I'm asking you to explain a little bit more why you think it would deprive us of jurisdiction just based on my past experience so you're just gun-shy based on your past experience. Yes right well and despite the video you have to be saying there was some issue about notice I mean a disputed issue of fact about notice. Yeah I mean I don't believe that the officer had notice of a serious medical need whatsoever I mean they kept asking Lance Royal are you okay did you swallow any cocaine he didn't complain of being sick he shows no physical signs it's interesting because this case is on video from the very beginning until the very end and he doesn't show any physical signs of being sick until he's in that interview room right before he and the only strange thing about that is it's Francis right who says who hears the thump and he thinks he's just decided to lay down take a nap on the floor I mean that seemed a little crazy to me. Well actually having done this these types of cases for a very long time it's really not that unusual they put these suspects in interview rooms and they get bored and they lay down on the floor they lay their head down on the desk because they're in there for you know quite some time and the adrenaline of being arrested kind of wearing off and they get tired so it actually does happen I might see not seem odd but did I answer sure okay so there are cases that I have cited that the officers are entitled to rely on the paramedics and I think that's crucial in this case is that the paramedics it talked to him and decided that he didn't need to be transported in a state of Perry versus Winslow the Seventh Circuit held that the officers are not medical professionals and officers are entitled to rely on the nurses professional judgment without subjecting themselves to section 1983 liability and in Arnett versus Webster the Seventh Circuit stated non-medical defendants can rely on the expertise of medical professionals so I think the fact that the paramedics checked him out at the scene whatever they decided to do examine him talk to him whatever they decided to do that's their professional opinion and the officers shouldn't have to guess second-guess the medical opinions of the professor of the paramedics and a question of whether or not there was a question of fact as to a serious medical need really was the bulk of the district courts opinion the question of whether or not there was clearly established law was addressed very briefly is that how it was argued below we just seemed surprising to me I know I looked at your briefs it looks like you did raise the question of clearly established law but yes this was a lengthy thorough opinion but it really addressed the first prong and didn't and that's in I agree and Judge Terry relied on this lover versus Hoover case or not that he relied on the estate of Clark versus Walker case and recently in 2018 he relied on the the Clark versus Walker case to hold that the officers violated clearly established law and recently the Seventh Circuit stated in 2018 and Lovett versus Hoover that that case is about a suicide risk and it's not analogous to a case where an intoxicated person was given an upper bunk in a cell and therefore the court held that you can't rely on a suicide case to instruct the officers what's reasonable in a case where a person's intoxicated and that's the case that Judge Terry relied on in this case and I think that he was wrong to rely on that yeah he didn't address the clearly established law issue alright I think we'll have to leave it at that okay thank you time is up mr. Myers thank you Chris Meyer for the happily it is the a police position that this case should be dismissed for want of jurisdiction it's been made mention already that judge cherry issued and I think was 56 page opinion analyzing all of the facts but what is the clearly established law that was violated here which is the second prong of the qualified immunity analysis and your honor I did not must confess I did not write this brief David Frank did he's left me that's why you have me the second string but I know that is clearly established law that officers cannot ignore a substantial risk of injury to suspect so the evidence here which is uncontested below it's especially given the video is that they asked him multiple times are you okay they turned him over and opened his mouth to try to get him to spit out the cocaine that was in his mouth they repeatedly asked when he was back in the squad car are you okay do you feel okay they told him spit it out because we won't hold it against you in your charges we're worried about your health it's all captured on on the video and I'm paraphrasing but and could I add that I mean I I'm quite taken with the fact that the paramedics look at him it's hard for me to imagine assigning any culpability to the police officers up to the moment when the paramedics say he's all right are they supposed to override what the paramedics said in this instance yes why you and what clearly established law requires that well let me talk about the remainder of the facts if I could because I think that's germane to your question yes some of the facts are just as you indicated there's so much more there's photographs of him basically covered in white powder they come on the scene in the officers and I believe it's officer Norris when he first struggles with my client or the decedent he spits out some cocaine other officers seen him chewing on a rock there's no doubt that he ingested some cocaine Portia Gentry tells the officers and she's the one that was driven to the hospital this is his passenger Portia officer or Portia tells the officers he needs to go to the hospital to but here we have a big Scott versus Harris problem don't we because she's cannot be heard saying that on any of these many recordings that were made it's just not there well there's no evidence that that her recording or that her conversations with the officers were recorded yes she was captured on because she was there the body cameras captured her the squad car cameras captured her well so we have a dispute the evidence I suppose but as Scott versus Harris says if it's blatantly contradicted by the record and I think that's kind of your best fact because they knew they did they saw him with the rock in his mouth they saw him spit out the cocaine and so they did have the paramedics examine him they did say we don't want you to have a heart attack you know but I don't think there's any uncontroverted evidence that she did not say these things to the police they dispute that well they do dispute that and it's not captured on the video so the video or the audios of the incident that captured many of her statements many of her statements but not necessarily all I think that comes down to a disputed fact so even if that is let's assume she said he needs medical care then the paramedics are there and they convey this information to the paramedics and they say he's fine what else should they have done and what clearly established law would have required them to do something beyond what the paramedics said your honor I'm not aware that the paramedics can necessarily overrule the police officers in fact I think that there's evidence well on issues of health needs the police I mean there's a lot of law to say the police officers are entitled to rely on medical doesn't mean the police officers couldn't have overridden them but did they violate a clearly established duty when they choose to rely on what the paramedics opinion is well I think they did especially in this situation where's the officers relating information to the paramedics but the paramedics are looking at him they did an independent examination and they're asking him questions and he is responding directly to the paramedics I'm fine he tells them something about the two I appreciate that but there's other evidence to look at first of all you know this is a suspect who's basically eaten some evidence I don't think it's unusual that a suspect would try and get rid of some of the evidence I think it's very unhealthy obviously the method that he chose to do it here but there's so much more evidence to look at in terms of how much that this particular suspect could have ingested so again putting it let's assume there's an issue of fact on whether or not they had reasonable notice of a serious medical need what is the clearly established thought that's the second prong of qualified immunity that has to be there what case what clearly established law is out there that says if paramedics look at an individual and they say he's fine or don't say he has to be transported to the hospitals that police officers should overrule that determination and take him to the hospital your honor I can only rely upon the cases that Mr. Frank cited in the brief but I think you know generally speaking officers when they're faced with a substantial risk of injury to a suspect even in cases where the suspect has you materials if it's so obvious that he could be in trouble I think they have a duty to take it was so obvious paramedics would have said that no well they didn't necessarily say in the case of Miss Gentry they took Miss Gentry to the hospital I mean you know the situation exercise their medical judgment and their medical judgment was she needed to go and he didn't well this is a situation I think where events are happening very fast-paced but again we're at that we're at qualified immunity and the question is are they entitled to it was there some clearly established law that required them to do more here I certainly haven't found any case that says if paramedics or other medical personnel say that somebody doesn't need to go to the general facts should override that in must take somebody to the hospital your honor I can't remember which officer it was but it was an officer that mentioned to the paramedic I don't think he needs to go and they still checked him out and another officer told them he ingested cocaine and the paramedics still went despite that statement and interacted with him and checked him out and said he didn't need to go so if they had walked away after the officer said that maybe you'd have a different case but they didn't walk away they went and they physically checked him out well your honor with all due respect nobody not even the paramedics knew how much he ingested and I think out of an abundance of caution they needed to take him to the hospital just like so you're asking for a per se rule that it is always on constitutional if the police know that someone has ingested some undefined amount of cocaine but they seem fine exhibiting no symptoms but that always requires a trip to the hospital even after examination by paramedics otherwise there's a constitutional violation I'm not willing to say always but I'm willing to say that on these facts which Judge Cherry found to be disputed that he needed to go to the hospital I mean he's got a white face so the paramedics could see that too why isn't the real case here against them they obviously made a but at most a mistake I don't see anything to make me think they were deliberately indifferent or anything of the sort but it's it's so hard to see why this is malfunctioned by the police officers on the scene who have presented him to the paramedics I understand that but the paramedics didn't they weren't on the scene at first they didn't see him chewing on the rock of cocaine they didn't see but they were told that including by Mr. Royal himself well they weren't I don't know that they were told everything I don't know that there's a lot of evidence in the record he told them and it's captured on the video and audio something about the two after the officers had said he had been chewing on cocaine and they went and they interacted with him and he said something about two pieces or two that sounded like he's referring back to that well I think that there are disputed facts and I think that you know because it is a qualified immunity case this court lacks jurisdiction to hear the appeal okay thank you very much Mr. Myers Mr. I think your time expired but there's no clearly established law that the Fourth Amendment would require would have required the officers to take any further precautionary actions than they took with respect to Mr. Royal but not only is there no clearly established law but in my briefs I cited cases one that's very factually similar to this case and it's a little bit more compelling because in that case the officers knew that the suspect had swallowed cocaine for sure and that was test versus City of Freeport it's a Northern District of Illinois case but it's very factually similar to this case they saw the driver twice put something in his mouth and drink from a bottle and when the driver stopped the van they handcuffed him they asked him if he had swallowed anything and he said he had swallowed a pencil each officer testified in their deposition that the suspect may have swallowed cocaine prior to or at the time of his arrest and the reasonable for the officers to conclude prior to observing any symptoms that he had not swallowed a significant amount of drugs and the court held that the officers in that case acted reasonably under the Fourth Amendment thank you thank you very much thanks to both counsel we'll take the case under advisement